. T. J. AND C. W. COCHRAN *v.* GEORGE RICHBERGER ET AL.

1. CHANCERY PLEADING. *Code* 1880, ¿ 539. *Bar thereunder.* *Averments of answer.*

An answer, filed in 1891, averring that defendants acquired a tax-title to
the land in controversy in 1878, "and have been in possession for more
than three years from the date of said deed," does not sufficiently set up
the bar provided by ¿ 539, code 1880, in that it fails to show that defend-
ants have occupied the land for the time required since the code of 1880
. (which is prospective) went into effect.

2. TAX-TITLE. *Three-years possession.* *Code* 1880, ¿ 539. *No bar, if land re-
deemed.*

Possession under a tax-title for the time required by ¿ 539, code 1880,
which provides that "actual occupation for three years, after one year
from the day of sale, of any land held under a conveyance by a tax-
collector, in pursuance of a sale for taxes, shall bar any suit to recover
such land or assail such title *because of any defect in the sale of such land
for taxes, or in any precedent step to said sale,*" will not bar the owner where,
within the time allowed, there was a redemption, this being a matter
occurring *after* the sale.

FROM the chancery court of Quitman county.
HON. W. R. TRIGG, Chancellor.

The lands in controversy, situated in Quitman county, were sold to the liquidating levee commissioners in 1868, for non-payment of levee taxes, and appellees claim under this sale. They were again sold to the liquidating levee commissioners in 1869. But the court finds from the record that R. J. Love, the original owner, redeemed the lands from both of these sales. Notwithstanding this, however, G. W. Neel purchased the lands from Gwin and Hemingway, commissioners of the liquidating levee board, in February, 1878, and received a deed therefor.

In January, 1872, the lands were sold to the state for non-payment of state and county taxes, and they were again sold to the state, under the abatement act, May 10, 1875. On October 21, 1880, they were purchased from the state by A. S. Oliver, who conveyed them to appellants, T. J. and C. W. Cochran. While the lands were held or claimed by the state, under the sales before mentioned, they were, on March 3, 1879, again sold by the tax-collector of Quitman county, being struck off to the state. But, on January 30, 1880, Neel, who had purchased from the liquidating levee commissioners, and who claimed the lands, redeemed them from this sale, paying the auditor the taxes for two years, and receiving a certificate of redemption.

Neel owned adjoining land, upon which he had tenants, who cut timber from both tracts, and asserted ownership and possession to some extent, as stated in the opinion. Neel conveyed to Wilbourne, who also asserted ownership, and he conveyed to appellee, Richberger, who gave a trust-deed on the lands, to secure a debt to the Clarksdale Bank & Trust Company.

The bill in this case was filed by the appellants, T. J. and C. W. Cochran, March 13, 1891, against Richberger and the trustee in the deed to the bank. Complainants claimed under their purchase from the state, alleging that they were the real owners of the land, and seeking to cancel the claim of the defendants as a cloud upon their title. The defend-

ants answered, denying the title of complainants, and asserting title in the said Richberger. Among other things, they averred that said defendant, and those through whom he claimed, had been in the actual, adverse, and exclusive possession of the lands for more than ten years next before the filing of the bill; that they claimed under a tax-title from the state of Mississippi, and had been in possession of the lands thereunder for more than one year. They also set up the bar arising from three years' occupancy of the lands under said deed, and also the lapse of five years after the execution of said deed before suit under the act of 1860. Laws, p. 213. Because of the several statutes of limitation so pleaded, the defendants averred that their title was absolute and indefeasible, and that complainants were barred of all relief. Defendants also set up that they had made valuable improvements, and had paid a large amount in taxes on the lands, and they asked that a charge be fixed thereon to satisfy the same, in the event their title should be held invalid.

On final hearing, a decree was rendered in favor of defendants, dismissing the bill, from which decree complainants appeal. The opinion contains a further statement of the facts necessary to an understanding of the questions decided by the court.

*J. B. Cochran,* for appellants.

1. The evidence shows that there was a redemption from the sale to the levee board in 1868.

In the case of *Shotwell* v. *Railway Co.,* 69 Miss., 541, this court held that, by virtue of the act of 1876, the title to all lands held by district No. 1, if not redeemed or purchased before a certain date, was vested in the state. The act seems to apply as well to lands belonging to the liquidating levee commissioners. If it does, appellants are the owners of all tax-titles shown by the record. Neel does not claim to have purchased from Gwin and Hemingway until after January 1, 1878.

2. In the lower court appellees invoked every statute of limitation known to the law, and introduced evidence to prove possession, but it is only necessary to refer to the depositions in the record to show that they failed as to this.

*J. W. & W. D. Cutrer*, for appellees.

1. The land in controversy is shown to have been sold to the liquidating levee board in 1868. The deed is *prima facie* evidence of a valid sale. Laws 1858, pp. 36, 37; Laws 1867, pp. 238, 239; *Carlisle* v. *Yoder*, 69 Miss., 384.

2. More than five years elapsed from the date of sale before an attack was made upon it, and the title is now perfect. *Sigman* v. *Lundy*, 66 Miss., 522; *Carlisle* v. *Yoder*, *supra.*

3. The act to quiet and settle titles claimed under sales for delinquent liquidating levee taxes, in express terms makes the title of appellees valid, notwithstanding any defect or irregularity in the sale. Such title can only be impeached by proof that the taxes for which the land was sold had been paid. Laws 1888, p. 42.

4. The land was conveyed by Gwin and Hemingway to Neel. Subsequently he redeemed from the state, after which he held the title free from all prior claims. The title is paramount. On this incontrovertible state of facts, the conclusion cannot be escaped that the appellants have failed to show a good tax-title.

5. The sale to the levee board in 1868 cannot be controverted. This being true, the land was not subject to sale to the state either in 1872 or in 1875, as this court has invariably held. The title of appellants rests upon sales which have already been adjudicated to be void. Neel bought from Gwin and Hemingway in 1878, and this sale carries with it the presumption that all claims against the land prior to that date had been extinguished.

6. Appellees rely on the five-years' statute in force at the time of the sale to the levee board, which this court has repeatedly held to have been operative at that time.

7. Reliance was further made upon the three-years' statute of limitations. The facts in support of this are that Neel owned the land, together with adjoining lands. He had a tenant on the adjoining tract, and this tenant cleared up land upon both tracts, used fire-wood and timber from both tracts indiscriminately, and occupied the property as thoroughly as it was possible to enjoy lands of the class and condition in question. Neel sold to Wilbourne, whose occupation was of the same character. Wilbourne sold to Richberger, and the possession thereafter continued as before. On this point see *Kirkman* v. *Mayes*, recently decided by this court.

COOPER, J., delivered the opinion of the court.

All consideration of questions involving the validity of the sale of the lands in controversy made to the levee board in May, 1868, is dispensed with by reason of the established fact that the lands were redeemed or purchased by Love under this sale, as well as under that made in 1869. Counsel for appellee have been misled by the statement of the auditor, W. W. Stone, whose deposition was taken. It is true this witness was asked, on cross-examination, to state whether the records of his office do not show that Love redeemed the land from the sale of 1868, and, in his answer, he fails to respond to this question, and only states that Love redeemed from the sale of 1869. But he also says that he has no information in reference to any of those sales or redemptions, except such as is furnished by the records of his office, copies of which he filed with his answers. On page 103 of the record is found the redemption from the sale of 1869, of which the witness speaks in his testimony, but on page 102 is found also a certified copy from his office, showing a redemption from the sale of 1868, as to which he is silent. This certified copy is made an exhibit to his deposition, and is referred to by him as supplying the information he has on the subject.

It is unnecessary to review the statutes relied on by the

appellees as curing any defects in that sale, since, if valid, it has become ineffectual by reason of the redemption.

Section 539 of the code of 1880 supplies no support to the claim of appellees, for several reasons. First, the answer does not set up that defendant and those under whom he claims have been in the actual occupation of the land for three years after the expiration of one year from the sale for taxes under which his title is derived, and since the adoption of the code of 1880. The answer only says that the parties under whom the defendant claims title, bought the land from Gwin and Hemingway in the year 1878, and have been in possession " for more than three years from the date of said deed." This may be true, and yet the defendant, and those under whom he claims, may not have been in such occupancy for three years since the code (which is prospective in its operation) was adopted.

But this provision of the code does not confer title upon an occupancy of three years. Its declaration is that, " actual occupation for three years, after one year from the day of sale, of any land held under a conveyance by a tax-collector, in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of such land for taxes, or in any precedent step to said sale, saving to minors," etc. The statute does not provide that possession for the time named shall confer title, nor that no suit shall be brought for the recovery of the land, but only that the title claimed shall not be assailed after the lapse of the time named, " because of any defect in the sale of such land for taxes, or in any precedent step to said sale." If the land was legally sold for the taxes of 1868, and the defendant had occupied for the time named in § 539 of the code, this would not preclude a recovery by the true owner who could show a redemption of the land from the sale under which the defendant claimed, for the suit would not be " to recover the land or assail the title because of any defect in the sale of such land for taxes, or in any precedent step to said sale,"

but it would be to recover the land because, though legally sold, the title had been re-acquired by the former owner by a step lawfully taken *after* the sale, viz., by redemption.

We have carefully read the evidence upon the subject of the adverse possession claimed by the defendant, and it is sufficient to say that the overwhelming weight is with the appellants.. Richberger and Neel, in very general and positive language, claim to have held the land in possession for many years, but the particular facts which prove such possession are not given.

On the other hand, the witnesses for appellants, who reside in the immediate vicinity, testify that the whole tract is wild and uncultivated; that there is not now, and never has been, a house on it, and no part of it has ever been in cultivation. The work upon the land, performed by Sam Miller and Pink Green, which is the only thing specifically shown by the defendants as having the color of possession by them, is clearly proved to have been commenced in the year 1890, and to have been abandoned before a single foot of the land was in condition to be cultivated. What they did was not of the character to give possession, and was of so recent a date as to be of no effect in support of any bar by which the title of the appellants could be affected.

No defect in the title asserted by the appellants is suggested, and the decree should have been in their favor.

*Decree reversed, and decree here.*